[Civ. No. 2933.   Third Appellate District.—December 14, 1925.]

## C. H. CASWELL, Respondent, v. BAKER & CO., INC., Appellant.

[1] EVIDENCE—CREDIBILITY OF WITNESSES—APPEAL.—If the trial court accepts the testimony of a witness and there is nothing inherently improbable in the testimony, or nothing showing that it cannot be true, courts of appeal are bound by the determination of the trial court.

[2] WAREHOUSEMEN — DEPOSIT OF BEANS — CLAIM OF THIRD PARTY— CONVERSION—EVIDENCE—FINDINGS.—In this action against a warehouse company for the conversion of certain beans deposited with it by plaintiff's tenant, a portion of which was claimed by plaintiff, the evidence was sufficient to support the findings of the trial court to the effect that the beans had been deposited with the warehouse company by the tenant with directions that plaintiff was to have a share thereof, and that the warehouse company had wrongfully issued warehouse receipts for the full amount of the beans, including those belonging to plaintiff, to a third party and thereafter sold the beans and credited said third party for the full amount thereof on a claim held by defendant against said third party.

[3] ID.—GOODS CLAIMED BY OTHER THAN DEPOSITOR — CONVERSION — ADVERSE CLAIMS—SECTION 18, WAREHOUSE RECEIPTS ACT—STATUTORY CONSTRUCTION.—Section 18 of the Warehouse Receipts Act (Stats. 1909, p. 437), which excuses a warehouseman from liability for refusing to deliver goods, either to the depositor or person claiming under him or to adverse claimants, until the warehouseman has had a reasonable time to ascertain the validity of the adverse claim or to bring legal proceedings to compel all claimants to interplead, applies where two or more persons other than the warehouseman have a claim to the articles stored, and does not apply where a direct suit in conversion is brought against the warehouseman himself, charging the warehouseman with conversion.

(1) 4 C. J., p. 848, n. 36.   (2) 40 Cyc., p. 478, n. 32.   (3) 40 Cyc., p. 443, n. 65 New.

APPEAL from a judgment of the Superior Court of Stanislaus County.   J. C. Needham, Judge.   Affirmed.

The facts are stated in the opinion of the court.

1. See 2 Cal. Jur. 918; 2 R. C. L. 207.

Dennett & Zion for Appellant.

T. B. Scott for Respondent.

PLUMMER, J.—Plaintiff had judgment in an action for the value of 192 sacks of beans alleged to have been converted by the defendant Baker & Co., from which judgment the defendant appeals. Both the appellant and the respondent set forth a *résumé* of the testimony in the briefs submitted on this appeal. After setting forth the testimony, appellant makes this statement: "With these facts in mind, it is the contention of the defendant that no credence can be placed upon his (plaintiff's) testimony as to what he did, or where he did it, and that such testimony should be given no credence in the consideration by the court as to whether he is entitled to relief." [1] It is almost commonplace for us to state that with the credibility of witnesses courts of appeal have nothing to do. The trial court has the witnesses before it and if the trial court accepts the testimony of a witness and there is nothing inherently improbable in the witnesses' testimony, or nothing showing that it cannot be true, courts of appeal are bound by the determination of the trial court.

The testimony set forth in the transcript shows that during the year 1922 one McBride was a tenant of the plaintiff Caswell; that during the year 1922 McBride farmed lands belonging to Caswell and raised thereon 537 sacks of cleaned beans; that McBride farmed Caswell's land upon shares; McBride's portion of the beans numbered 345 sacks, Caswell's portion 192 sacks; that after the beans were harvested, McBride employed a truckman to haul the beans and deliver the same at a warehouse belonging to the defendant; that immediately after the beans had all been hauled and delivered to the warehouse belonging to the defendant, McBride called at the warehouse, had a conversation with Mrs. Kelly, a bookkeeper of the defendant, asked for a piece of paper that he might figure out the number of sacks belonging to himself and the number of sacks belonging to Caswell and at that time stated that Caswell owned a certain portion of the beans just de-

livered; that McBride was informed by Mrs. Kelly that the fairest way to divide the beans would be to wait until they had been cleaned; that upon the receipt of the beans by Baker & Co., tags were issued therefor for the several sacks of beans, the heading of which tags, after giving the date, read as follows: "Received from McBride for account of M. B. & G. Co." Then follows a detailed statement of the number of bags and gross weight of beans received. These tags were delivered to McBride. McBride testified that he did not examine these tags and that he never gave directions to anyone that the tags should be made out in favor of M. B. & G. Co., which the testimony shows to be the letters used to indicate Modesto Bean and Grain Company; that shortly after the beans had been recleaned McBride, in company with an official of the Modesto Bean and Grain Company, went to the office of the defendant and had a warehouse certificate for 345 sacks of beans issued in favor of the Modesto Bean and Grain Company; McBride testified that he never gave any agent or official of the defendant any directions to issue any warehouse certificate to anyone covering the remaining 192 sacks of beans. The record shows that Baker & Co. did issue warehouse receipts or certificates in favor of the Modesto Bean and Grain Company covering the 192 sacks of McBride beans which McBride and Caswell testified belonged to Caswell as his share of the beans raised upon the Caswell ranch. Some time after certificates had been thus issued covering all the beans delivered at the warehouse of Baker & Co. by McBride the Modesto Bean and Grain Company discovered that it had to its credit 192 sacks of beans deposited by McBride with Baker & Co., that the Modesto Bean and Grain Company had not purchased and thereupon wrote the following letter:

"Dec. 28th, 1922.    Baker and Company, Modesto, Calif.

"Dear Sir: There are 192 sacks of the McBride Blackeyes, a portion of lot No. 6571 which belong to C. H. Caswell. The Modesto Bean and Grain Company never had any title to these beans. About November 12th when we learned the fact that we had not purchased these beans, we set aside lot No. 6692 W-R No. 800—192 sacks for Mr.

Caswell. Please deliver these beans or their equivalent to Mr. Caswell, and oblige.

"Modesto Bean & Grain Co.

"By P. S. Bomberger, President.

"Carbon copy sent to Mr. Caswell.

"O. K. W. T. Scoon, Trustee."

On the right-hand side: "O. K. JWH."

It further appears from the transcript that at the time of the writing of this letter by the president of the Modesto Bean and Grain Company to Baker & Company that the bean company was in financial difficulties and at the same time owed Baker & Company a considerable sum of money and that at the time of the writing of this letter the defendant had in its possession 551 sacks of beans inclusive of the 192 sacks of beans which Baker & Company had been directed to transfer to the account of Caswell on the ground that the bean company had not purchased the same. It further appears from the transcript that under these circumstances and the financial difficulties in which the Modesto Bean and Grain Company was laboring as a debtor of Baker & Company, Baker & Company took the 551 sacks of beans before referred to, sold the same as its own, giving credit to the bean company for the 551 sacks of beans above mentioned. In the latter part of December the plaintiff called upon the defendant and demanded his 192 sacks of beans. These beans the defendant refused to deliver, alleging that they were covered by outstanding warehouse receipts. Warehouse receipts, however, had been returned by the Modesto Bean and Grain Company sufficient to cover the quantity of beans to which the plaintiff alleged he was entitled, though it would appear that they were not the identical beans, as the letter quoted calls for the identical beans or their equivalent. Some days after the refusal of the defendant to deliver the beans claimed by the plaintiff this action was begun. [2] The appellant, among other things, urges that the testimony is contrary to the findings made by the trial court. This claim, however, is supported only upon the theory that the defendant's version of the transaction, or rather that the version of the transaction as testified to by the defendant's witnesses, is correct, but, as we have said, there is testimony supporting the plaintiff's conten-

tion that the beans were deposited with the defendant; that the defendant was informed that Caswell was entitled to a share of the beans; that directions were never given by McBride or the plaintiff to issue a warehouse certificate to the Modesto Bean and Grain Company for any greater number than 345 sacks of said beans; that the warehouse certificates issued in favor of the bean company covering the remainder of said beans were made without any directions being given therefor, either by McBride, the plaintiff, or the bean company, and that the bean company notified the defendant of the mistake; that the defendant thereafter sold the beans and credited the Modesto Bean and Grain Company for the amount thereof on the claim or account that the defendant held against the said bean company. There is testimony also to the effect showing the value of the beans at the time of the alleged conversion was equal to the judgment rendered by the trial court.

[3] The appellant makes the further contention that the cause of action, if any, which the plaintiff had was barred by the provisions of section 18 of the act of the legislature, approved March 19, 1909 (Stats. 1909, p. 440), and the amendments thereto. That section reads as follows: "If someone other than the depositor or person claiming under him has a claim to the title or possession of the goods, and the warehouseman has information of such claim, the warehouseman shall be excused from liability for refusing to deliver the goods, either to the depositor or person claiming under him or to the adverse claimant, until the warehouseman has had a reasonable time to ascertain the validity of the adverse claim or to bring legal proceedings to compel all claimants to interplead. If such adverse claimant shall not bring suit and serve summons on the warehouseman within forty-eight hours after the service of notice of his adverse claim, such failure shall act as a complete abandonment of such adverse claim."

In deciding this contention, which was argued in the court below, the learned trial judge used the following language, which we adopt as correct: "The first point to be considered is whether the provisions of Section 18 of the Warehouse Receipts Act are applicable to the case under consideration. This section is quoted in full in the briefs submitted by the attorneys for both parties, and it is not

necessary to incorporate it herein. I think from a reading of this section that it is not applicable to the situation which is now before the court in the pending case. In the pending case, the warehouseman, himself, is making a claim to the grain deposited or stored as against a depositor. I think the section must be construed to mean that where two or more persons other than the warehouseman have a claim to the articles stored that the warehouseman would then have the right to insist that this section of the Warehouse Receipts Act be complied with. But where the situation is such that a direct suit in conversion is brought against the warehouseman himself, charging the warehouseman with conversion, it cannot be argued that this section is applicable. The dispute here is between the defendant and the plaintiff; no one other than Caswell, and Baker & Company are making claims to this property. McBride makes no claim to the property in question, neither does the Modesto Bean & Grain Company; in fact, all the parties who might claim title testified that the property was the property of the plaintiff, other than the defendant, warehouseman. It seems to me that the slightest analysis of the section in question would lead one irresistibly to the conclusion that this section was only meant to apply where two or more persons other than the warehouseman were making claims to property deposited and held under warehouse receipt.''

We think the judgment of the trial court should be affirmed, and it is so ordered.

Hart, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 11, 1926.